MATTHEWS v. NANCE, SHERIFF.

1. JUDGMENT—PRACTICE—REMEDY—LIEN—SALE.—The sale of property under execution divests the liens of all judgments against it, the lien of a senior judgment is transferred from the property to the proceeds, and the holder cannot have property resold under such judgment.

2. SHERIFF—HOMESTEAD—MANDAMUS—REMEDY.—A sheriff may refuse to sell property in which a homestead is claimed, and where there is a dispute as to the title, mandamus to require the sheriff to sell is not the proper remedy.

Before WITHERSPOON, J., Abbeville, December, 1896. Reversed.

The following is the Circuit decree:

This is a proceeding commenced by petition and affidavit, praying for a writ of mandamus against F. W. R. Nance, as sheriff of Abbeville County, to require him to sell as such sheriff a certain tract of land hereinafter more particularly described. Upon petition and affidavit, on November 17th, 1896, I granted a preliminary order directing the writ to issue in the alternative, and making it returnable on November 28th, 1896. Afterwards, by consent of all parties, it was agreed that the matter should be heard by me at chambers in Greenville, S. C., on November 26th, 1896,

and it was so heard upon the petition, affidavits, and return of the sheriff to the alternative writ, and upon the record in the case of E. P. Matthews, as executor, &c., against F. M. Pope, referred to in the affidavit and petition. I find the following matters of fact: 1. That the judgment upon which the execution in this case was issued, is based upon a cause of action which arose prior to the adoption of the Constitution of 1868, and was recovered in Newberry County on or about the 7th day of December, 1886. 2. That the said judgment was duly transcribed to Abbeville County, and became a judgment of the Court of Common Pleas for Abbeville County on the 23d day of February, 1887, and that execution was issued on said judgment on October 12th, 1896, and was lodged with the sheriff of Abbeville County on October 15th, 1896. 3. That at the time the said judgment was filed in the office of the clerk of the Court of Common Pleas for Abbeville County, F. M. Pope, the judgment debtor, was resident of the said county of Abbeville, and was the head of a family, and was the owner of the following described real estate situate in said county, to wit: "All that tract or parcel of land, situate, lying, and being in the town of Ninety-Six, county of Abbeville, and State of South Carolina, containing four acres, more or less, known as the Pope place, and bounded by the public square, Church street, Mechanic street, lands of J. P. Phillips." 4. That on salesday in September, 1889, the said land was sold by the sheriff of Abbeville County, after due levy and advertisement, under the execution of C. Aultman & Co., as the property of F. M. Pope, and was bid off by C. Aultman & Co., who hold sheriff's title therefor. 5. That on December the 7th, 1886, F. M. Pope conveyed said property to G. W. Connor. 6. That on October the 27th, 1887, G. W. Connor conveyed said property to Mrs. Elizabeth M. Pope, the wife of F. M. Pope. 7. That on the same day, October 27th, 1887, Mrs. Pope conveyed the property to Mrs. Mattie L. Utsey. 8. That in January, 1888, while Mrs. Utsey was in possession of the property, she mort-

gaged the same to A. J. Salinas & Son. 9. That A. J. Salinas & Son recovered judgment of foreclosure of their said mortgage, and the said property was sold thereunder on salesday in January, 1892, and was bid off by A. J. Salinas & Son, who took master's title therefor. 10. That all the deeds above mentioned, except that to the said C. Aultman & Co., were held to be fraudulent, null, and void, and were ordered to be cancelled by the clerk of the Court. 11. That in the said suit of C. Aultman & Co. it was determined that A. J. Salinas & Son were entitled to the homestead of the said F. M. Pope in the said premises as against the said judgment of C. Aultman & Co., and the sheriff was directed, under the decree of Judge Ernest Gary, to lay off said homestead, and said homestead has been assigned by said sheriff. Exceptions to the assignment of said homestead by the sheriff were overruled by me, on the ground that I was bound by the order of Judge Ernest Gary, which has been affirmed on appeal. 12. That the said E. P. Matthews, as executor as aforesaid, was never made party to any of said proceedings. 13. That the said judgment of the said E. P. Matthews, as executor as aforesaid, against the said F. M. Pope, remains unpaid.

The sheriff, by his return, claims that he has no power to sell said premises, by reason of the fact that the sheriff of Abbeville County has once sold said property under the execution of C. Aultman & Co., as above stated, and, therefore, that the lien of the Matthews judgment was discharged. The question, then, for decision is, can the sheriff be compelled by mandamus to perform the duty devolved upon him by law of making a sale under execution? It becomes important, then, to determine when the writ of mandamus will lie. Ordinarily, the writ will issue when the duty sought to be enforced is a plain ministerial duty, and the petitioner has no other adequate remedy. There is no question here that the duty of the sheriff to sell property under execution is a plain ministerial duty. The question, then, narrows itself down to this: can the sheriff refuse to obey

the process of the Court on the ground that the process will be unavailing, and that the purchaser at a sale under execution will not secure a good title? In the case of *The State ex rel. Wallace* v. *Hayne and Mackey*, 8 S. C., p. 378, Associate Justice states the law of mandamus thus: "Mandamus issues whenever a public officer is called upon to do a ministerial act of a specific character, and, on demand, has refused its performance." In the case of *McLaurin* v. *the County Commissioners*, 7 S. C., 376, the Supreme Court lays down the law thus: "The question upon mandamus is, whether a specific ministerial duty has been imposed by the law to perform the act which the relator seeks to compel. If such appears to be the case, and her demand for compulsory performance is in support of the recognizable right that has been denied, then mandamus ought to go."

It has been held time and again in this State that the sheriff cannot be enjoined from making a sale of land under execution, on the ground that the property sought to be sold is not the property of the judgment debtor. This in effect is the claim of the sheriff in his return to the alternative writ. Could the sale of this property be enjoined? If it could not, then it would seem to follow necessarily that the sheriff can be compelled by mandamus to make the sale. See the following: *Wilson* v. *Hyatt*, 4 S. C., 369; *Chapman* v. *Younger*, 10 S. E. Rep., 1077; *Gillian* v. *Arnold*, 11 S. E. Rep., 331; *Crocker* v. *Allen*, 13 S. E. Rep., 650. It is also claimed by the sheriff as a reason why he will not sell the property is that it has already been sold under the execution of C. Aultman & Co. against F. M. Pope, and that the sale must be referred to the oldest judgment in the clerk's office, which is the judgment of E. P. Matthews, as executor, &c. This is a general rule, but in this case it has already been decided that the homestead of F. M. Pope was never sold for reason that the Aultman judgment never had a lien on it. Be that as it may, this does not excuse the sheriff from making the sale under execution, as it would be, in effect, deciding a question of a title between

parties who are not before the Court, upon a mandamus proceeding, which cannot be done. As is said above, it is a plain ministerial duty which the sheriff is called upon to perform, and the question as to what may be the probable result cannot affect this proceeding. But even if we concede the right of the sheriff to refuse to make a sale under execution, on the ground that the property has already been sold, provided a good title has been conveyed, how does the matter then stand? It was decided in the case above mentioned of C. Aultman & Co. against Mattie L. Utsey and A. J. Salinas & Son, that A. J. Salinas & Son were entitled · to claim the homestead of F. M. Pope in the premises in dispute. The respondent now claims that the question of homestead is *res judicata*, and that he cannot be compelled to sell the land, because it has been decided that A. J. Salinas & Son are entitled to the homestead which Pope would have been entitled to. In the case of *Bull* v. *Rowe*, 13 S. C., 355, it is decided that an assignment is absolutely void as to a debt which was contracted before the adoption of the Constitution of 1868. The Court says in that case: "The circumstances of the case may suggest some vague idea of *res judicata*, as the debtor has the right to but one homestead, while he may have many debts, and as it would be unreasonable to require to have his homestead laid off as many times as he has creditors, an impression is apt to arise that the assignment is in some way a proceeding *in rem*, or of administration, and that when made, it must be regarded as once done for all, and that every creditor is somehow bound thereby. The principles of *res judicata* are very extensive and effective. * * * But it presupposes a tribunal and jurisdiction of the subject matter, and it is indispensable that there should be parties notified who have the right to be heard. * * * We are obliged to say Sarah Watt's rights were never adjudicated, and she should not be bound by the *ex parte* ministerial proceedings under which Rowe's homestead was laid off, which did not and could not embrace her debt." "No person can be made a party in a case except

by process of law or by his own consent. (Citing numerous authorities.) The law upon this subject is condensed by Thompson on Homestead and Exemptions, sec. 230, as follows: 'It is scarcely necessary to state, as general rule, that a dedication of homestead in whatever form does not have the effect of withdrawing it from liability on account of any pre-existing debts, liens, conveyances or charges which would have otherwise bound the land;' and again sec. 291: 'Every debt created by contract prior to the passage of any homestead or exemption law, is privileged from the operation of such law. To this rule, as the writer understands, the Court can admit no exception. * * * It is said in *Newton* v. *Summey*, 59 Ga., 399: It has been often ruled by this Court in effect, that in the assignment of a homestead there is no magic by which superior liens can be thrown off or deficient titles made perfect. Those whose claims outrank the Constitution may stay out of the ordinary's court, and nothing there done will be in their way.'" (In Georgia, homestead is assigned in the ordinary's court.) It is not claimed by the respondent that E. P. Matthews was ever made a party to any of the proceedings between C. Aultman & Co. and A. J. Salinas & Son in their contest over this land, and the debt sought to be enforced having arisen before the adoption of the Constitution of 1868, I hold that the claim of homestead is one that is subordinate to the judgment sought to be enforced in this proceeding. It is also claimed by the respondent that E. P. Matthews has been guilty of *laches* in not enforcing his judgment sooner. The judgment was recovered in 1886, was docketed in Abbeville County in 1887, less than ten years ago. This being so, I cannot make a new statute of limitations. The legislature having given judgment creditors ten years to enforce their judgments, the Court has no power to change the rule. The sheriff is bound to enforce executions placed in his hands, even if the judgments on which they are based are void. See the case of *Bragg* v. *Thompson*, 19 S. C., 572. I therefore hold as matter of law: 1. That the

sheriff has no right to refuse to make a sale under execution because in his opinion the purchaser at such sale may not get a good title.    2. That as to E. P. Matthews, as executor of the will of Bud C. Matthews, deceased, the assignment of homestead to A. J. Salinas & Son is not *res judicata*.    3. That as the debt upon which E. P. Matthews, as executor as aforesaid, against F. M. Pope, was recovered, arose before the adoption of the Constitution of 1868, homestead cannot be claimed against it.    4. That the relator has not been guilty of *laches*.    5. That the return of the sheriff is insufficient, and must be overruled.

It is, therefore, ordered and adjudged, that a peremptory writ of mandamus issue out and under the seal of the Court, cemmanding the said sheriff to make the sale prayed for in the petition on salesday in December, 1896, if the sale has been advertised; and if not, then on salesday in January, 1897.

From this decree the respondent appeals.

*Messrs. Frank B. Gary* and *Samuel C. Cason*, for appellant.

*Messrs. Geo. S. Mower* and *Graydon & Graydon*, contra.

Mr. Justice Gary being disqualified, Judge R. C. Watts sat in the case.

May 31, 1897.  The opinion of the Court was delivered by

JUDGE WATTS, A. A. J.    This is an appeal from a peremtory writ of *mandamus* issued by his Honor, Judge Witherspoon, directing the sheriff of Abbeville County to sell certain real estate.    The order of his Honor, Judge Witherspoon, should be incorporated in the report of this case.    The facts of the case are: on salesday in September, 1889, the sheriff of Abbeville County, after due advertisement, sold at public outcry all of the right, title, and interest of F. M. Pope in the premises described in the petition herein, to satisfy sundry executions against said F. M. Pope.

At the time of said sale the judgment of E. P. Matthews, as executor, &c., against F. M. Pope, was of record in the office of the clerk of court for Abbeville County. At said sale C. Aultman & Co. became the purchasers and received sheriff's titles to said premises. In 1890, Nance, successor to former sheriff, advertised for sale the same premises under execution issued upon the Matthews judgment. Whereupon the said sheriff was served with notice that the homestead of F. M. Pope in said premises had been adjudged to belong to A. J. Salinas & Son; that by an order of Court he had proceeded to set off and assign it to A. J. Salinas & Son; that an appeal from the return of commissioners in homestead is now pending, and that if he should persist in selling the said premises, he and his bondsmen would be proceeded against. Thereupon the sheriff, acting under the advice of his counsel, declined to sell. Application for a writ of mandamus to compel him to sell was made to his Honor, Judge Witherspoon, who granted the writ. From this order the defendant appeals on seven grounds, all which allege error on the part of his Honor, Judge Witherspoon in directing a peremptory writ of mandamus to issue. To us it seems that he was in error in so deciding.

The principle of law in this State is too well settled to admit now a question, that where a sale of property is made under an execution, such sale divests the lien of all judgments, whether execution has been issued upon them or not, and that it is the duty of the sheriff to apply the proceeds of such sale to the various judgments having a lien according to their rank. As is said by learned counsel for appellant herein, "Throughout an unbroken chain of decisions, commencing with Snipes against the sheriff of Charleston, 1 Bay, 295, down to the case of Garvin *v.* Garvin, 34 S. C., 388, this has been the accepted doctrine in South Carolina." In the case of *Trumbo* v. *Cummings,* 20 S. C., 336, Mr. Justice McIver, in delivering the opinion of the Court, said: "Ever since the case of *Snipes* v. *the Sheriff of Charleston,* 1 Bay, 295, and *Greenwood* v. *Naylor,*

1 McCord, 414, followed by *Gist* v. *McJunkin*, 1 McMull.,
342, *Vance* v. *Red*, 2 Speers, 90, and *McKnight* v. *Gordon*,
13 Rich. Eq., 222, recognized in the recent case of *Agnew*
v. *Adams*, 17 S. C., 364, it has been uniformly held in this
State, that a sale by the sheriff under a junior judgment
divests the lien of the senior judgments and confers a good
title on the purchasers.    The senior judgments being first
entitled to the proceeds of the sale in the order of their pri-
orities."    Such being the law in this State, and Matthews'
judgment being the oldest lien upon the property sold, he
had the right to demand that the proceeds of the sale be ap-
plied to his judgment, but he has no right to a resale, for he
has no longer a lien on the property—that was divested by
the sale, and his lien transferred from the property itself to
the proceeds of sale.    In *Gist* v. *McJunkin*, 1 McMul., 324,
Mr. Justice O'Neall uses this language: "The judgment
under which they now claim was recovered upon a judgment
in favor of James Dugan against John T. McJunkin, on
which there was an execution lodged in the sheriff's office
on 16th of October, 1826.    The sheriff's sale to Thompson
was subsequent, and hence the sale would be referred, if
the ordinary's execution (the execution under which Thomp-
son bought) was satisfied, to Dugan's execution, and his
judgment would be entitled to the proceeds of sale and not
to the right to set up the satisfaction of the elder judgment
and claim to resell the land."    But even if Pope's home-
stead was liable to Matthews' debt, as contended by counsel
of respondent, and was not sold in 1889, still Judge Wither-
spoon was in error in granting the order he did, for he did
not attempt to limit the sale to homestead, but ordered all
of the premises sold which had been sold in 1889.    But it
is unnecessary to pursue this view further, for, as we have
already said, he was in error in granting the order he did
at all.    For, as we view the matter, E. P. Matthews, as ex-
ecutor, has now no legal rights as to the property in dispute;
he no longer has any leviable interest in the premises sold.
    Ordinarily a writ of mandamus may be issued to require

an officer to perform any duty of a ministerial character pertaining to such office (*State ex rel. Swinton* v. *Bates*, 38 S. C., p. 326). But here, as we have seen, Matthews has no leviable interest in the premises sold, and has had none since the sale in 1889; since that time his lien has been divested and transferred from the premises to the funds arising from proceeds of said sale. Now, when the sheriff was threatening to sell, he was notified that he would sell a homestead which has been adjudged to belong to another, and if he persisted in so doing, he would do so at his peril. Right then he had the right to pause and refuse to proceed further until he was protected by an order of Court; and he certainly had the right to appeal from the order of the Circuit Judge to the highest Court in the State, to get the law of the case fixed in a matter so seriously affecting his duties as sheriff, and his liability as such on his official bond, considering what a grave penalty is fixed upon him if he sells a homestead. Had he proceeded to sell under the order of his Honor, Judge Witherspoon, without appeal, he would have done so at his peril. "Where claims are seriously contested between third parties, which must be determined before it can be ascertained whether the sheriff is in default, a rule on the sheriff is not the proper mode of determining such contested claims, but the parties should be left to their action or other proceeding in which all persons interested can be made parties." *Corry* v. *Tate*, 48 S. C., 548. In the case of *Rowe* v. *Cockrell* (Bailey's Equity, 126,) it is held: "A sheriff is not bound to risk becoming a trespasser; and if the title of property levied on be disputed, he has the right to demand ample indemnity before he proceeds. He is not bound to act even if indemnity be rendered, but he may leave the parties to their remedy in equity."

We are of the opinion that, in a case of this kind, mandamus will not lie. It is the judgment of this Court, that the order of the Circuit Judge be reversed, and that petition for mandamus and all proceedings thereunder be dismissed.