WILLIAM C. H. WOOD, Appellant, v. HARVEY E. FISK et al., Respondents.

*Conversion—wrongful repledge of securities deposited as collateral to note — when bankruptcy a defense — repledge of securities not a willful and malicious injury to property within meaning of Bankruptcy Act.*

1. The defendants, who were stockbrokers, loaned plaintiff a sum of money, taking in return his promissory note and certain shares of stock as collateral security and thereafter repledged the securities for an amount in excess of that authorized by the pledgor. They were later adjudicated bankrupts. Thereafter, on the maturity of the note, plaintiff tendered to defendants the amount due and demanded the return of the securities. Defendants answered that the securities, which had already been sold by the subpledgees, could not be returned. Plaintiff, thereupon, brought this action for conversion, basing his cause of action on failure to return the collateral after tender of the debt. Defendants, having been discharged

in bankruptcy, plead the discharge in bar. *Held*, that plaintiff's cause of action does not grow out of the fact that the tender was rejected. It grows out of the fact that the shares were repledged. The subsequent refusal is merely evidence of the extent and measure of the loss.

2. The repledge of the securities being the origin of the wrong, it follows that, at the filing of the petition, the plaintiff held a claim that was provable in bankruptcy. It was a claim "founded * * * upon a contract express or implied." (Bankruptcy Act, § 63a, subd. 4.) The repledge of the collateral was a wrong and the cause of action was thus complete at the moment of the bankruptcy, and it did not cease to be provable, because the damages were then unliquidated. (Bankruptcy Act, § 63b; *Phenix Nat. Bank* v. *Waterbury*, 197 N. Y. 161, distinguished.)

3. The misuse of the plaintiff's securities is not to be classified as a willful and malicious injury within the meaning of that statute. Hence, a contention that even though his claim was provable, it was excepted from the operation of the discharge, as within the meaning of section 17 of the Bankruptcy Act, cannot be sustained. (For present statute as to wrongful pledge of securities, see Penal Law, § 956; L. 1913, ch. 500.)

*Wood* v. *Fisk*, 156 App. Div. 497, affirmed.

(Argued May 4, 1915; decided June 1, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 23, 1913, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the trial court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. H. Payne* and *Louis F. Doyle* for appellant. This is purely an action for conversion, and, unless the rights of the parties were altered by the filing of the petition in bankruptcy the cause of action arose on and not before March 21, 1910, when the plaintiff's note matured and he tendered payment and demanded his securities, but the defendants failed to return them. (*Lawrence* v. *Maxwell*, 53 N. Y. 19; *Castle* v. *Corn Exchange Bank*, 148 N. Y. 122; *Williamson* v. *Seely*, 22 App. Div. 389; *Chan-*

*kalian* v. *Powers,* 89 App. Div. 395; *Logan County* v. *Townsend,* 139 U. S. 67; *MacDonnell* v. *Buffalo L. T., etc., Co.,* 193 N. Y. 92; *Oregon & Transcontinental Co.* v. *Hilmers,* 20 Fed. Rep. 717; *Cohnfeld* v. *Walsh,* 2 App. Div. 190; *Rothschild* v. *Allen,* 90 App. Div. 233; *Byrne* v. *Weidenfeld,* 113 App. Div. 451; *Katz* v. *Diamond,* 16 Misc. Rep. 577.) The defendants' discharge in bankruptcy does not affect the plaintiff's cause of action unless such cause of action existed at the date of the filing of the petition in bankruptcy, February 1, 1910. (*Matter of Burka,* 5 Am. Bank. Rep. 12; *Matter of Garlington,* 8 Am. Bank. Rep. 602; *Swarts* v. *Fourth Nat. Bank,* 8 Am. Bank. Rep. 673; *Matter of Adams,* 12 Am. Bank. Rep. 368; *Matter of Reading Hosiery Co.,* 22 Am. Bank. Rep. 562.) The filing of the petition in bankruptcy made no such change in the relations of the parties as to bring into existence a claim in favor of the plaintiff against the defendants as a debt existing on the day the petition was was filed. (*Lawrence* v. *Maxwell,* 53 N. Y. 19; *Matter of Neff,* 157 Fed. Rep. 57; *Matter of Swift,* 112 Fed. Rep. 315; *Matter of Pettingill,* 137 Fed. Rep. 143; *Phenix Nat. Bank* v. *Waterbury,* 197 N. Y. 161.) Even if the conversion occurred before the filing of the petition in bankruptcy, the claim was not discharged because in that event it was a liability for willful and malicious injury to plaintiff's property within subdivision 2 of section 17 of the Bankruptcy Act. (*Kavanaugh* v. *McIntyre,* 210 N. Y. 175; *Tinker* v. *Colwell,* 193 U. S. 473; *McChristal* v. *Clisbee,* 16 Am. Bank. Rep. 838; *Flanders* v. *Mullin,* 18 Am. Bank. Rep. 708; *McDonald* v. *Brown,* 10 Am. Bank. Rep. 58; *Matter of Munro,* 195 Fed. Rep. 817; 197 Fed. Rep. 450; *Parker* v. *Brattan,* 120 Md. 428; *Hallagan* v. *Dowell,* 139 N. W. Rep. 883.)

*A. Leo Everett* for respondents. Upon the facts pleaded and proven, the plaintiff failed to establish a right of action for conversion. (*Salt Springs Nat. Bank* v.

*Wheeler*, 48 N. Y. 492; *McMorris* v. *Simpson*, 21 Wend. 610; *Sternberg* v. *Schein*, 63 App. Div. 417; *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300;· Remington on Bankruptcy [2d ed.], 1692, § 1807; *Guaranty Trust Co.* v. *Todd*, 170 N. Y. 233.) The plaintiff had a provable claim against the defendants' estate ·under subdivision 4 of section 63a of the Bankruptcy Act, on the ground that·it was " founded upon an open account, or upon a contract express or implied." (*Crawford* v. *Burke*, 195 U. S. 176; *Fechter* v. *Postel*, 114 App. Div. 776; *Maxwell* v. *Martin*, 130 App. Div. 80.) The claim arising under subdivision 4, section 63a, became fixed at the time of the filing of the petition in bankruptcy, February 1, 1910, and was, therefore, provable. (*Cortelyou* v. *Lansing*, 2 Caines' Cas. 200; Jones on Pledges [3d ed.], § 748; Cooley on Torts [2d ed.], 532; *Woolner* v. *Hill*, 93 N. Y. 576; *Kelsey* v. *Griswold*, 6 Barb. 436; *MacDonnell* v. *Buffalo L., T. & S. D. Co.*, 193 N. Y. 93; *Matter of Swift*, 112 Fed. Rep. 315; *Nichols* v·. *Scranton Steel Co.*, 137 N. Y. 471; *Windmuller* v. *Pope*, 107 N. Y. 674; *Kelly* v. *Insurance Co.*, 186 N. Y. 16; *Ferris* v. *Spooner*, 102 N. Y. 10; *Union Ins. Co.* v. *Central Trust Co.*, 157 N. Y. 643.) Defendants were not guilty of willful and malicious injury to property. (*Kavanaugh* v. *McIntyre*, 210 N. Y. 175; *Tinker·* v.· *Colwell*, 193 U. S. 473.)

Cardozo, J. The action is brought for the conversion of stock. The defense is a discharge in bankruptcy. The question is whether the cause of action was provable in bankruptcy, and if provable, whether it was affected by the discharge.

The defendants at the date of these transactions were stockbrokers in the city of New York. The plaintiff was their customer. They loaned him $39,000, and received his promissory note with one hundred shares of Baltimore and Ohio stock and two hundred and one shares of Union Pacific stock as collateral security. The note provided

that they might repledge the securities for an amount not in excess of the customer's indebtedness. They did repledge the securities, but they did not observe the limitation. The securities were mingled with a mass of others, and repledged as collateral to a general loan. On February 1, 1910, an involuntary petition in bankruptcy was filed against the brokers, and a receiver appointed. On March 1, 1910, they were adjudicated bankrupts. On March 21, 1910, the note matured. The plaintiff then tendered to the defendants the amount of the note, and demanded the return of the securities. The defendants answered that the securities were not in their possession and could not be returned. In point of fact, they had already been sold by the sub-pledgees. The plaintiff now sues for conversion; and builds his cause of action on the failure to return the collateral after the tender of the debt. The defendants in the meantime have been discharged in bankruptcy, and plead the discharge in bar. The plaintiff replies that his cause of action was not provable in bankruptcy; that it did not arise until tender and refusal; and that till then, it was contingent and unprovable. He disclaims any purpose to rely on the repledge of the securities as making out a conversion. To give his right of action that basis, would be to trace its origin to a date anterior to the bankruptcy. He elects, therefore, to rely on the demand and the refusal, and viewing them as isolated acts, he argues that at the hour of bankruptcy, the debt was not in being.

Whatever the plaintiff's election or desire may be, his cause of action for conversion, if it is to be sustained at all, must go back, we think, to the wrong involved in the repledge of the collateral. The note was an asset of the estate; the shares of stock were collateral to the note; the receiver had the right to hold them; and from the moment of bankruptcy, the note and any collateral accompanying it were in the custody of the law. Take out of the case the element of the repledge, and there has been

no conversion at all. Let us suppose, for illustration, that the securities had never been repledged, but were still intact. Let us suppose that they had been earmarked, and turned over to the receiver. Obviously, the failure of a bankrupt in such circumstances to surrender them to a customer, would not constitute a wrong. They had been taken from him and impounded by the act of the law itself. The tender, indeed, in the case supposed, if it was made to the bankrupt, was not even made to the right person. It ought to have been made to the receiver. The note, after the bankruptcy, was payable to the receiver, and the right to collect it was given to no one else. It is impossible, therefore, to shut our eyes to the events before the bankruptcy, and to concentrate our attention on the events that followed. It is only because of the earlier events that the plaintiff can prove that he has been wronged. His cause of action does not grow out of the fact that the tender was rejected. It grows out of the fact that the shares were repledged. The subsequent refusal is merely evidence of the extent and measure of the loss.

We go back, then, to the repledge of the securities as the origin of the wrong, and going back to that act, we find that at the filing of the petition, the plaintiff held a claim that was provable in bankruptcy. It was a claim "founded * * * upon a contract express or implied" (Bankruptcy Act, section 63a, subd. 4; *Crawford* v. *Burke,* 195 U. S. 176). The repledge of the collateral for more than the plaintiff's indebtedness was a wrong both by force of general rules of law, and in this case by force of the express restrictions of the note. It may have constituted a conversion (*Douglas* v. *Carpenter,* 17 App. Div. 329; *Mayer* v. *Monzo,* 151 App. Div. 866). It was unquestionably a breach of contract (*Donald* v. *Suckling,* L. R. [1 Q. B.] 585; *N. Y., L. E. & W. R. R. Co.* v. *Davies,* 38 Hun, 477, 480). There are times, it is true, when a repledge, though illegal, will expose the

broker to a liability for nominal damages and no more. This is so where the securities are redeemed and restored to the customer upon demand (*Donald* v. *Suckling, supra*). A repledge, unlike a sale, does not involve an absolute repudiation of the title of the primary pledgor; the conversion, if we view the transaction as a tort, is an assumption of partial rather than complete dominion; and the return of the subject of the pledge is, therefore, provable in mitigation of the damages (*McCormick* v. *Penn. Central R. R. Co.*, 80 N. Y. 353, 362; *Bigelow Co.* v. *Heintze*, 53 N. J. L. 69; Mayne on Damages [7th ed.], p. 429; Sutherland on Damages [3d ed.], vol. 4, section 1140). But if, as a result of the repledge, the securities are put in a position where they cannot be returned upon demand after tender by the customer of the balance due upon them, then the value of the customer's equity in the securities is the measure of his loss. In either case, however, the repledge remains a wrongful act, whether the damages recoverable are nominal or substantial. The tender and refusal do not constitute the wrong. They are evidence of the extent of damage resulting from the wrong. They show that the consequence of the repledge has been to disable the pledgee from restoring the thing bailed (*Matter of Neff*, 157 Fed. Rep. 57; *Matter of Pettingill Co.*, 137 Fed. Rep. 143, 147). The cause of action was thus complete at the moment of the bankruptcy; it had its origin in a breach of contract (*Crawford* v. *Burke, supra*); and it did not cease to be provable, because the damages were then unliquidated (Bankruptcy Act, section 63b; *Williams* v. *U. S. F. & G. Co.*, 236 U. S. 549, 556).

The case of *Phenix National Bank* v. *Waterbury* (197 N. Y. 161) is much discussed in the briefs of counsel. It does not control the case at bar. The defendants agreed to buy, and the plaintiff agreed to sell, shares of stock in a corporation. The time of performance was stated to be six years after the date of the agreement, or earlier at the

plaintiff's option.   Before the date fixed for performance, and before any election by the plaintiff to name an earlier date, the defendants became bankrupts.   Years afterwards the plaintiff tendered the stock and demanded payment.   It was held in this court that the cause of action was not provable under subdivision 1 of section 63 of the Bankruptcy Act, and was not barred by the discharge.   There had been no breach by the defendants when the petition was filed.   Their duty to buy the shares and the plaintiff's duty to deliver were concurrent and reciprocal.   The whole transaction remained executory.   In the case at bar the wrong had already been done, the securities had already been placed beyond the bankrupts' control, and all that remained was to liquidate the damages.   The decision in *Williams* v. *U. S. F. & G. Co.* (*supra*) is, in principle, controlling.   In that case a builder became bankrupt.   At the time of his bankruptcy he was in default under his contract.   The surety on his bond was sued, and paid the loss resulting from the breach.   In an action brought by the surety to recover the payment from the bankrupt, the latter pleaded his discharge.   On the one side it was argued that until the surety paid the loss, the claim for reimbursement was contingent and unprovable.   On the other side, it was argued that the surety could not be permitted, by postponing compliance with his own promise, to preserve a right of recovery that would otherwise be barred. The Supreme Court took the latter view, and held that at the moment of bankruptcy the debt, though not liquidated, was susceptible of liquidation, and was thus a provable demand.

The plaintiff makes the additional point that even though his claim was provable, it was excepted from the operation of the discharge.   He argues that it was, within the meaning of section 17 of the Bankruptcy Act, a liability for "wilful and malicious injuries to the property of another."   We held in *Kavanaugh* v. *McIntyre*